is found in the proof, that his warrant was executed, and certificate recorded by the surveyor, and that from the plot, (called in the proceedings *Steyer's* rough plot,) he, *Steyer*, not only had not, but could not locate in his resurvey the land included in *Smith's* survey, by reason of the *interlocking* of the lines of older tracts, which destroyed the continuity of the vacancy.

The knowledge conveyed by this plot, is the only evidence in the record that *Smith* knew of *Steyer's* warrant, and from this he could draw no other conclusion, than that the land included in his survey called *The Birmingham Mines*, was untouched by *Steyer's* resurvey, theretofore executed, called *The Plains of Moab*.   The decree is affirmed.

DECREE AFFIRMED.

---

ANN GRAY *vs.* WALTER CROOK, JR.—*December*, 1841.

Since the act of 1825, chap. 117, on appeal, in a case brought up on bills of
. exceptions, this court only decides upon the prayers as made below, or the
instructions which appear to have been granted.

Where a married woman, who has a separate estate during coverture, was
furnished with articles suitable to her condition in life, for the use of the
house in which she dwelt with her husband and family, and both before
and after the decease of her husband, who was insolvent, promised to pay
for them generally, and also as soon as she received her dividends from a
specified portion of her estate, in an action at law, brought by the vendor
after the husband's death, to recover the value of the articles so furnished,
against the wife, the survivor, the court will not instruct the jury, that there
was *no* evidence that the private and separate estate of the defendant was
ever pledged originally for the payment of the plaintiff's claim; nor, that
there was *no* evidence that the goods were furnished at the request, or upon
the promise of the defendant.

Neither will the court in such case instruct the jury that the proper jurisdic
tion over the claim of the plaintiff (if any existed,) was vested in a court
of equity.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit* commenced by the appellee against the appellant on the 30th August 1837.   The defen-

dant pleaded the general issue, but it was agreed that either party might give in evidence any matter that could be offered, if the same was specially averred or pleaded; and that in the trial of the cause it is to have the same effect as if specially set forth in the pleadings. The defendant was authorised to set up any defence that could be offered in any state of the pleadings.

At the trial of the cause the plaintiff offered evidence that his account was repeatedly presented to the defendant, at least half a dozen times in the year 1835; that she promised to pay it, and never denied its correctness. On the 13th July, 1835, she stated that in a few weeks she would receive funds from her father's estate through the trustees of the Steam Boat Company, and would pay the same. The plaintiff's account commenced on the 9th May, 1826, and ended on the 2nd May, 1834; it was for various articles of upholstery—as curtains, paper hangings, blinds, matrasses, altering and making carpets, &c., furnished in the intermediate period, and amounted to $1,029.45. The father of the defendant, by his last will and testament, devised to trustees for the sole and separate use of his daughter, the defendant, free from all control of her husband during her natural life, a variety of real and personal property, and the will was proved on the 19th June, 1828. The plaintiff further proved that the father of the defendant, *Benjamin Ferguson*, died in 1828, and that said defendant is the daughter of the said *Ferguson*, and spoken of in said will as *Ann Gray*, she being at that time the wife of *Walton Gray*, who died in January, in the year 1836; that the said defendant *Ann Gray* has ever since been and now is a widow. The plaintiff further offered competent evidence to prove that said *Walton Gray*, at the dates of the several charges in the plaintiff's account, was in bad credit, and that he petitioned for the benefit of the insolvent laws of *Maryland* on the 15th of November, 1820; and again on the 20th August, 1827; and again on the 12th April, 1830; and again on the 20th January, 1831; and again on the 4th April, 1834. The plaintiff further offered evidence to prove that the trustees named in the above will of *Benjamin Ferguson*

undertook the said trust, and that the portion of the separate income of the said defendant, out of the property and estate devised for her sole and separate use by the said will, amounted to $2,602.14 in the year 1834, and in the year 1835 to the sum of $2,381.05, and in the year 1836 to the sum of $2,992.13; that her said separate income under the said will from the death of the said testator to the year 1834, was less than in the year 1834, but that she had such separate income, which between the death of the said testator and the year 1834, and also in the years 1834, 1835 and 1836, was regularly paid to her by the said trustees, and that her said separate income has continued and still continues, and has been regularly paid to her by the said trustees up to this time.   The plaintiff further offered evidence that the said last mentioned witness was the collector of the plaintiff in the years 1835 and 1836; that as such collector he called on defendant in 1835, during the life of her said husband *Walton Gray*, for the payment of the said account, and that she then promised to pay the same, and that he, the last mentioned witness also called on her for payment of the same two or three times in the year 1836, after the death of her said husband; that at one of the said calls the said defendant promised to pay the same, and at another, she promised to pay it as soon as she received her dividends from the stock of the Union Line of steamboats; that he the witness requested her to call on the trustees for her dividends, to which she replied that it was unnecessary, as they always sent her word when her dividends were ready, and that the defendant then appointed a day when she would pay it; that the witness called on the day appointed precisely, and the defendant told him that she had sent up the money; that this was in the year 1836, and after the death of the defendant's husband, but that no payment was in fact made, to his knowledge.   The plaintiff further proved that the dividends coming to the said defendant from the said Union Line of steamboats were regularly paid to her by the trustees in the years 1836, 1837, 1838 and 1839.   The plaintiff further proved by a competent witness, that he the said last mentioned witness

assisted as a workman of the plaintiff in putting up in the house of the said *Walton Gray*, the defendant's husband, part of the articles charged in the said plaintiff's account. The plaintiff further proved that *Walton Gray* continued to transact business in a small way; that he kept a small counting room in a store where he occasionally transacted business, but his business was not sufficient to support his family without the aid of his wife's estate.

The defendant then proved by a competent witness, that for three or four years after the death of *Benjamin Ferguson*, the testator mentioned in the foregoing will, *Walton Gray*, the husband of the said *Ann*, was in the receipt, and had the command of large sums of money, but that those sums arose from the dividends upon his wife's estate, which she permitted him to receive.

The plaintiff further proved that at the time the articles mentioned in the said account were furnished, the defendant was moving in a respectable circle in life, with one or more children, and that the said articles were suitable and appropriate, considering the defendant's position in society.

Whereupon the defendant prayed the opinion and direction of the court to the jury, that there was in this case no evidence to show that the private and separate estate of the defendant was ever pledged originally for the payment of the plaintiff's claim, and that in the absence of such testimony, the plaintiff was not entitled to recover, which opinion and instruction the court refused to give to the jury. The defendant excepted.

The said defendant further prayed the opinion and direction of the court to the jury, that there was no evidence in the cause to show that the goods charged in that account of the plaintiff were furnished at the request, or upon the promise of the defendant, and without such evidence the plaintiff was not entitled to recover; which opinion and direction the court refused to give to the jury. The defendant excepted.

The said defendant further prayed the opinion and direction of the court to the jury, that in this cause the plaintiff was not entitled to recover, because the proper jurisdiction over the

claim of the plaintiff, if any existed, was vested in a court of equity, which opinion and direction the court refused to give. The defendant excepted.

The verdict being against the defendant, she prosecuted this appeal.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, CHAMBERS and SPENCE, J.

By WALSH for the appellant, who insisted—

1st. That there is no evidence in the cause to show that the separate estate of the defendant was pledged in any way for the debts mentioned in the declaration; and in the absence of such evidence, there is no consideration for the subsequent promise relied upon by the plaintiff.

2nd. That there is no evidence to show that the property mentioned in the declaration was furnished at the request or upon the promise of the defendant, and without such evidence, there is no consideration for the promise after the death of the husband, relied upon by the plaintiff.

3rd. The appellant will rely upon the ground taken in the third prayer in the record, that if any claim existed, jurisdiction over it was in a court of equity.

To show that as there was no express pledge of the separate estate of the wife in this case, the contract in judgment of law was the husband's he cited, 32 *Law Lib.* 138, 142; *Duke of Bolton vs. Williams*, 2 *Ves. Jr.* 143; *Jones vs. Harris*, 9 *Ves. Jr.* 894; *Heatly vs. Thomas*, 15 *Ves. Jr.* 596; *Bullpin vs. Clark*, 17 *Ves. Jr.* 365; 3 *Maddox*, 387.

The contract of sale as to a portion of the articles furnished, took place before the separate estate was created. The promise of the appellant was no more nor less than to pay the debt of her husband, and made subsequent to the debt, and hence not founded on any consideration. 2 *Pothier*, 27. The articles furnished were not necessaries. 1 *Ser. & Low.* 10. This debt was always the debt of the husband. 14 *E. C. L. Rep.* 188; 11 *E. C. L. Rep.* 84; 1 *Camp.* 120; 22 *Ser. & Low.* 187; 2 *Strange*, 204.

LLOYD and MARTIN for the appellee, maintained—

1. That there was evidence in the cause from which the jury were authorised to find that the property mentioned in the declaration was furnished at the request and upon the promise of the appellant; and that if this be so, the express promise made by the appellant, after the death of her husband, to pay for the said property, was a valid promise founded upon a sufficient consideration.

2. Assuming that the property mentioned in the declaration was furnished at the request, and on the promise of the appellant, and that after the death of her husband she expressly promised to pay for it, as stated in the first point, that then the appellee was entitled to recover his claim, although there was no evidence shewing that the separate estate of the appellant had been pledged for the said debt.

3. That the claim of the appellee resting upon an express promise, founded on a sufficient consideration, as above insisted on, it was competent for him to enforce it in a court of law, as the appropriate jurisdiction.

The goods were furnished on the promise and at the request of the appellant—the husband a bankrupt—this fact was known and the credit was given to the wife. 5 *Taunton*, 131, '36, '44. 11 *Eng. C. Law Rep.* 301.

The jury might infer a sale on the credit of the wife; the husband never was responsible. Under a conflict of evidence the question is always for the jury. *Ferguson vs. Tucker*, 2 *Harr. & Gill*, 181; *Davies vs. Barney*, 2 *Gill & John.* 382; *McEldery vs. Flannagan*, 1 *Harr. & Gill*, 320; *Pawson's Adm'rs. vs. Donnell*, 1 *G. & J.* 1.

A moral obligation supplies a consideration at law for an express assumpsit. 1 *Lord Raymond*, 389; 5 *Taunt.* 37; 1 *E. Com. Law*, 10; *Barnes vs. Hedley*, 1 *Taunt.* 174; *Early vs. Mahon*, 19 *John.* 147; 3 *E. Com. Law*, 260, 4 *Bing.* 459, 15 *Eng. C. Law Rep.* 39; 12 *E. C. Law Rep.* 184; 2 *Carr. & Paine*, 383; 7 *Conn.* 57; 2 *Binn.* 591; 3 *Pick.* 207; *Wennall vs. Adney*, 3 *Boss & Pull*, 249, *notes.*

31      v.12

Gray vs. Crook.—1841.

But for the coverture, the law would have implied a promise to pay. Her promise relates to the original request. *Oatfield vs. Waring*, 14 *John*. 188; *Jackson vs. Halloway*, 7 *John*. 83.

The act of the wife in this case after the death of her husband binds her. *Lee vs. Muggeridge*, 1 *Ves. & Bea.* 122, 123.

The principle of all the cases cited is, that a moral obligation to pay a debt is a sufficient foundation for an express promise to pay. The contract here was with the wife of an insolvent husband. The goods were furnished upon her request for the use and accommodation of herself and family, suitable to her condition in life, and it was consummated by a pledge of her private separate estate. The goods were a gain to the promisor, a loss to the promisee, the two great ingredients of a contract at law. *Wennall vs. Adney*, 3 *Boss. & Pull.* 249, *notes*.

The express promise to pay is a distinctive feature in this cause. It confers jurisdiction on a court of law. *Edwards vs. Davis*, 16 *John*. 284, *note a*.

RICHARDSON for the appellant in reply.

The only question in the first prayer is, whether if the goods were originally furnished upon the request of the appellant, she then being covert, is she bound to pay in this action? We insist, if she made a contract at all it was the contract of her husband. The debt due *Crook* was due from *Mr. Gray* in point of law. Whether it was the husband's debt or her debt, was a fact which should have been submitted to the jury. If the law does not throw the creditor on him, then it was a fact for the jury to decide which was the debtor, the husband or the wife. Independent of the pledge of the private estate, in point of law, this was the debt of the husband. Let us review the facts. In 1826 *Mr.* and *Mrs. Gray* lived together in the same house, master and mistress. In 1826, *Crook* furnished goods to the value of 250; all the articles were for the house in which *Gray* and wife lived. In 1829 more goods were furnished to amount of $150. So in 1830 and 1831. All the articles were suitable to their condition in life. There is no

evidence until 1835 of a promise to pay, and *Mrs. Gray* was then covert. The husband died in 1836. After his death she again promised. There was no evidence of a demand of payment from 1826 to 1835. It was the husband's debt in 1826 when first contracted. Then there was no private estate. The father died in 1828, and she had no property until then, but that furnished by the husband. 2 *Pothier*, 27. *Evans' notes.* The contract of a married woman is void. The husband is answerable for necessaries. The supply of these to her does not constitue a personal claim against her. Her separate estate is an exception. In cases within the exception the separate estate is pledged. *M. E. Church vs. Jacques*, 1 *J. C. R.* 450. Another test is, that if *Gray* had been sued, judgment must have gone against him. And as to the wife, a subsequent promise upon an executed contract is void.

As to whose debt it was from the delivery of the goods to the death of *Gray*, the counsel cited 14 *E. C. Law*, 188; 11 *E. L. Law*, 84; 1 *Campb*. 120.

The husband is responsible, living with the wife, for any goods to any extent he permits his wife to receive. The case of 22 *Serg. & Low*. 187, is like the case at bar as to the delivery of the goods. 2 *Strange*, 204. The wife's agreement is the husband's contract, if he knows of it and suffers it to be executed.

Again, *Gray* was released under the insolvent law in 1827, and he was thus released from his responsibility for the portion of this account previously contracted. Then the wife had no personal estate. Her father died in April, 1828. The separate estate then commenced, and in 1830 *Gray* is again released by the insolvent law. In the mean while the second large item of the account accrued. But his application in 1834 covers the whole of the claim. The cases of 1 *E. C. Law R.* 131; 5 *Taunt*. have no application here.

The husband's indebtedness up to his death is established both in fact and at law; and if the question of present indebtedness depends on—to whom the credit was given—as a question of fact, it is for the jury to decide. The question of credit

to whom given, was kept from the jury.    It does not arise on the first prayer, but as the *second* prayer was also refused, this was equivalent to a declaration that there was evidence that the goods were furnished on the promise of the defendant. The implied effect of this refusal is, to say the goods were furnished on *Mrs. Gray's* credit.    11 *E. C. L.* 301.

The case of *Lee vs. Muggridge,* 5 *Taunt.* 37, is contrary to decided cases, and unlike the case at bar.

*Mrs. Gray* has no *jus disponendi* of her property under her father's will.    She was the mere recipient of rents and profits, and differs from the case in *Taunton,* where the wife had the power of disposal.

The debt of the wife having separate property, is like the debt of any other *feme covert,* unless she pledges her separate estate.    She must intend to charge it, and have the ability to do it.    2 *Roper on Hus. and Wife,* 32 *Law Lib.* 137, 142.

There is an agreement to wave errors of pleading, and that the plaintiff may recover upon any case which he might have made in pleading upon the actual proof in the case.    But in point of law, according to the facts, the plantiff has made no case, and the agreement does not aid him.

Forbearance is no consideration for a promise to pay a void debt.  1 *Strange,* 94; 7 *Harr. & J.*; 2 *L. Ray,* 1055; 7 *Conn. Rep.* 64.

BY THE COURT—                    JUDGMENT AFFIRMED.

---

THOMAS HUTCHINS *vs.* THOMAS HOPE.—*December,* 1841.

If the answer swears away or denies the equity stated in the bill, the injunction granted on the bill will be dissolved; but if the equity be admitted or is not denied, or if new matter is set up in the answer by way of avoidance of any material allegation in the bill, the injunction will be continued until the final hearing or further order.

An answer alone will not support a distinct fact set up in it by way of avoidance, and upon the motion to dissolve an injunction is not considered as established.    Such a defence must be made out by proof.