ROBERT CONN ET AL.
            vs.                MARCH TERM, 1848.
JAMES CONN ET AL.

[POSTHUMOUS CHILD—SEPARATE ESTATE OF MARRIED WOMEN.]

COURTS of equity will use all possible ingenuity to construe testamentary expressions, in such manner as to include all children living at the testator's death ; and, a child in *ventre sa mere* is considered as living at that time.

When the testator stands in the relation of parent to the legatees, a court of equity will lay hold of any general expression, which will include all the children, though it may be apparent from the context, that only children in existence when the will was made, were within the contemplation of the testator.

Yet, when it is evident, that the testator really forgot that other children might be born to him, and has, upon the face of the instrument, made provision for only such as were living at the date of the will, it is impossible to supply the defect and give such after-born child any provision, notwithstanding the anxiety of the court to do so.

Where the testator has described the children, *by name*, among whom the estate is to be divided upon the happening of a contingency, it is impossible to bring a posthumous child within the description.

Before the separate estate of a married woman can be· charged for her engagements, it must be shown that her contract was made with direct reference to such separate estate ; and she is not to be regarded with respect to such estate, as a *feme sole*, to all intents and purposes, and bound by any form of contract into which she may please to enter, whether made with reference to such estate or not.

It is competent to show the intention of the wife, to charge her separate estate, by parol evidence.

[William Conn, deceased, by his will dated 14th June, 1821, devised all his property, (consisting of real estate in Baltimore county,) after payment of his debts, &c., to his wife Elizabeth Conn for life ; to be divided equally amongst all his children, whom he mentioned by name, in case she should marry before his youngest child, Margaret, arrived at the age of twenty-one years. Should she marry before, the division was not to be made till his said daughter attained that age ; but if such marriage should afterwards occur, the division was to be made immediately. Six months after the testator's death his widow had a son, Silas W. Conn, for whom no provision was made in said will; and afterwards in the year 1833, she intermarried with James Hall of Baltimore county, and died in the year 1841, leaving no issue by said Hall, who survived her. By deed of trust and settlement, between said Elizabeth, and James Hall, and James Conn, executed a few days before the marriage, her personal property was conveyed to James Conn, in trust, for her sole and separate use, with 'power to dispose of the same as if she were a *feme sole*, and invest the proceeds in such manner as she thought fit ; and also, with the power to dispose of the same by will. After her marriage to Hall, she purchased of four of the children of her first husband, the interest which they severally had in their deceased father's estate. The real estate of the testator, Wm. Conn, was, after the death of his widow sold under proceedings in this court, and two accounts were stated by the Auditor, assigning the proceeds of sale to the parties entitled under the will of the testator. Before such distribution was actually made, a petition was filed by Edward Jenkins and others, stating that said Elizabeth, during her second marriage, had been possessed of a separate estate, and had traded as a *feme sole*, with the consent of her husband ; that she, together with him, had made to the petitioners, respectively, a single bill, and two promissory notes ; and had died, without paying the same, and leaving no assets except the funds then in court for distribution. The petition further stated, that James Hall, was also dead, insolvent, and prayed for an application of the said funds, to the

satisfaction of the petitioner's debts. A petition was filed for the same purpose, by John Glenn, as permanent trustee of another creditor, of said Elizabeth, on a note given during her coverture, by her and her son Thomas, with whom she had traded, under the firm and style of Thomas Conn & Co., said note was given in April, 1839, and the firm afterwards failed, and Thomas Conn obtained his discharge under the insolvent laws. The statute of limitations was pleaded against all these claims, but was afterwards withdrawn against all but the latter, which was marked No. 4, the three first being numbered, respectively, 1, 2 and 3. In the subsequent account of the Auditor, the proceeds of sale were distributed amongst the children of William Conn, including the posthumous child Silas W. Conn, and the portion which in the previous accounts was assigned to them as heirs at law, of their mother, was therein applied to the part satisfaction of the claims filed. Exceptions to this account were filed, and submitted to the Chancellor on written arguments, the principal points raised being, whether the posthumous child of William Conn, was entitled to a share of his father's estate ; and, whether the separate estate of Elizabeth Hall, could be applied to the satisfaction of the claims filed :]

THE CHANCELLOR:

It is true, that a court of equity will use all possible ingenuity in construing testamentary expressions in such manner as to include all children in existence at the testator's death ; and, that a child in *ventre sa mere* is considered as living at that time.

And, it is also true, that when the testator himself stands in the relation of parent to the legatees, in which case it is his duty to provide for his children at his death, a court of equity will lay hold of any general expressions which will include all the children, notwithstanding, it may be apparent from the context, that only children in existence when the will was made were within the contemplation of the testator. Yet, even as between parent and child, when it is evident that he really forgot that other

children might be born to him, and has, upon the face of the instrument, made provision for only such as were living at the date of the will, it is impossible to supply the defect, and give such afterborn child any provision, notwithstanding the anxiety of the court to do so. 1 *Roper on Legacies*, 146, 3 *ves.*, 611.

In this case, the testator has described the children by name, among whom the estate was to be divided upon the happening of either contingency upon which the estate to his widow was to determine ; and, it is impossible, therefore, to bring this posthumous son within the description. He must, therefore, be excluded from the distribution.

[As to the second question, the Chancellor said :]

These creditors of Mrs. Elizabeth Hall, rest their right to be paid their several claims out of the proceeds of her real estate, upon the ground, that by the marriage contract between her and her husband, Hall, her estate was settled to her separate use ; and there can be no' doubt that a *feme covert*, with respect to her separate property, will be regarded in a court of equity, to some extent at least, as a *feme sole*, and may dispose of it without the assent of her trustee, unless she is specially restrained by the instrument by which she acquires the separate estate. Eminent judges have differed, it is true, with regard to the precise limits of this power. Some insisting, that the mode of disposition pointed out in the instrument (and none other) must be pursued ; whilst others have held, that even though a particular mode is specifically pointed out, any other may be adopted, unless the instrument itself restrains the wife to the particular mode. *Methodist Church* vs. *Jaques*, 3 *Johns. Ch. Rep.*, 77 ; *Jaques* vs. *Methodist Church*, 17 *Johns. Rep.*, 548.

As, however, in this case no particular mode of disposing of the property settled upon Mrs. Hall is pointed out, but she is, by the instrument, left at liberty to dispose of it as if she was a *feme sole*, there is no necessity for expressing any opinion upon the point in regard to which the Court of Errors and the Chancery Court of New York appear to have differed.

In the case of *Price and Nisbet* vs. *Bigham*, 7 *Harr. and Johns.*, 296, a contract by a married woman, to charge land conveyed to a trustee, for her separate use during the coverture, with power to sell and convey, and absolutely dispose of the same, was maintained; and the land charged by her with the payment of the debt was held liable therefor in equity. The court, in this case, put their decision upon the ground, that the charge was within the meaning and spirit of the disposing power; and expressly waived any decision of the question of the validity of the contract, upon the broad ground of treating the wife, in respect of the property settled to her separate use, as a single woman; resting their decision upon the special charge by which she made it liable.

The case of *Tiernan* vs. *Poor and wife*, 1 *G. & J.*, 216, was a case in which a wife, having the absolute power by deed or contract, to dispose of real estate conveyed to her sole use, after the marriage, without the concurrence of her husband, executed to the complainant with her husband, a mortgage upon her separate estate, to secure to him a debt due from her husband, upon consideration that the creditor surrendered an existing security. This was decided to be a contract within the limits of the wife's disposing power, and was enforced as such.

And in the subsequent case of *Brundige* vs. *Poor et ux.* 1 *G. & Johns.*, 1. The Court of Appeals decided that a deed executed by husband and wife in the form of a mortgage, of real estate held in trust for the separate use of the wife, though not acknowledged according to the acts of assembly, created a specific lien on the trust property, and it was enforced accordingly—the deed being to secure the payment of a debt due from the husband, and the consideration being, the giving him time to pay the debt.

In all these cases, it will be seen that there was a clear engagement on the part of the wife, to charge specifically the property settled to her separate use; and no allusion is made in either of them, except in the case in 7 *Harr. & Johns.*, 296, to the effect of a contract on the part of the wife, without such specific charge, regarding her simply as a *feme sole*.

There is, however, a very decided opinion expressed by the learned judge, who delivered the opinion of this court, in *Tiernan* vs. *Poor and wife*, that the contract by which the separate estate of a married woman is attempted to be charged, must be shown to be within the limits of her *jus disponendi*, and it is not very clearly seen how this can be done, unless it be also shown that she is contracting for the direct purpose of charging such separate estate.

The case of *Gray* vs. *Cook*, 12 G. & J., 236, relates particularly and exclusively to the degree of the proof, which it is necessary to produce, of the intention of the wife to pledge her separate estate. There is certainly nothing in that case from which it can be fairly inferred, that the contract of a *feme covert* will be enforced against her separate estate, unless it is shown that she intended to charge it.

It would seem, therefore, in this case, that before these parties can succeed in their application to have the proceeds of the land which has been sold under the decree. of this court, (or that portion of it to which Mrs. Hall, is entitled,) charged with the payment of their claims, they must show, *first*, that her interest in the land was part of her trust estate ; and, secondly, that she designed to charge it with such payment.

This land was purchased by, and conveyed to Mrs. Hall, during her coverture ; notwithstanding which the conveyance is good, there being no act declaring the dissent of the husband, nor a waiver or disagreement, thereto by the wife, after his death. *2 Kent's Comm.*, 150, *lecture* 28.

The property embraced in the marriage settlement was personal, merely ; and for that reason, as well as because the settlement was executed long prior to the deeds conveying the land to her, the settlement could not comprehend the latter. Upon the face of the instruments, therefore, the property, the proceeds of which are sought to be affected by these proceedings, constituted no part of the trust estate ; and although the marriage settlement provided for a sale of the property embraced in it, and a reinvestment of the proceeds in other property or funds, there is nothing in this case to show such sale and reinvestment,

and of course it does not appear that the land in question was purchased with the product of the trust estate, and has been substituted for it.

These lands, therefore, are not shown to have been a part of the trust estate.

And even if there were grounds for inferring, that the lands were so purchased, and that they are to be considered as constituting a part of the trust estate of Mrs. Hall, and subject to her disposition in equity, as a *feme sole*, these creditors would still, in my judgment, not be entitled to be paid out of the proceeds of their sale, unless they could also prove that she intended to charge them with the payment of their claims.

Although a married woman having a separate estate, is, with respect to it, to be regarded as a *feme sole*, yet her capacity to act as such, is to be confined to that very property, and she is not as to all intents and purposes placed on the same footing with an unmarried woman. I have not been able to find any American case in which the power of the wife over her separate estate, has been carried farther; and Chancellor Kent, in the elaborate opinion delivered by him, in the case of the *Methodist Church* vs. *Jaques*, 3 *Johns. Ch. Rep.*, 77, over and over again approves of this limitation upon the power of the wife. The act, to be binding, must be with respect to her separate property; and although she may not, in the disposition of her separate estate, be confined to the particular mode pointed out in the instrument, yet I apprehend, that before her separate estate can be charged for her engagements, it must be shown, that her contract was made with direct reference to such separate estate; and that she is not to all intents and purposes, as to it, to be regarded as a *feme sole*, and bound by any form of contract into which she may please to enter, whether made with respect to her separate estate, or not.

Still, looking to the case of *Gray* vs. *Cook*, 12 *G. & J.*, 236, I am of opinion, that it would be competent for these parties to show by parol evidence, that Mrs. Hall, when she entered into the engagements, upon the strength of which they now attempt to charge the proceeds of these lands, designed to

pledge her separate estate; and if they can succeed in doing so, and can likewise remove the other objections which stand in their way, they may be entitled to be paid.

The claims numbered 1, 2, and 3, are, as has been stated, founded upon the joint notes of James Hall, the husband, Elizabeth Hall, the wife; and although it is admitted, that he as well as his wife, died leaving no personal estate, it is not shown that he left no real estate; and consequently, in any event, without further proof, the estate of the wife could be charged with no more than one-half of the claim. To make her estate liable for the whole claim, regarding it as a joint debt, the insolvency of James Hall, must be shown.

I do not concur with the reasoning of the counsel for these creditors, that it is immaterial whether the land was settled to the separate use of Mrs. Hall, or not; and that a liability can be fastened upon her, upon the ground that she traded and dealt as a *feme sole*.

The cases of *Clayton* vs. *Adams*, 6 *T. R.*, 545, *and Marshall* vs. *Rutten*, 8 *T. R.*, 545, are conclusive against any such doctrine.

Under all the circumstances of this case, I shall order it to stand over for a reasonable time, with liberty to these creditors to furnish evidence, if in their power, to remove the objections which have presented themselves to my mind, to the payment of their claims in the present state of the proceedings; reserving the power to pass such further orders in the premises, as the nature of the case may require.

[No appeal was taken in this case.]