ELIZABETH H. LIGHTFOOT, by next friend, etc., *vs.* JOHN M. BASS and others.

October Term, 1876.

MARRIED WOMAN—SEPARATE ESTATE—MORTGAGE TO SECURE MONEY LOANED TO HUSBAND.—Under our decisions, a married woman who has a separate estate in land, "with full power to dispose of it in her life-time by sale, or by last will and testament," cannot validly mortgage it to secure money loaned to her husband; and the law has not been changed by the act of 1870, 99 (T. & S. Rev. § 2486, *a, et seq.*), which gives married women, upon privy examination, the power "to sell, convey, devise, charge, or mortgage" their separate realty, as *femes sole,* "provided the power is not expressly withheld in the deed or will under which they hold the property."

*W. G. Brien,* for complainant.
*G. P. Thruston,* for defendants.

THE CHANCELLOR:—Under a petition filed by Z. Payne and Margaret G. Cartwright, as executor and executrix of the last will and testament of Greenwood Payne, deceased, to sell lands of the estate of the testator for the payment of debts, and division among those entitled, the county court of this county, at its April term, 1866, ordered the land to be sold, and directed the petitioners to "carry out the decree, and make title to the purchasers, and report as early as practicable after the sale." The land was accordingly sold, on the 9th of May, 1866, lots 12 and 13 being

struck off, the report of sale says, to J. Lightfoot.   On the next day the petitioners, describing themselves as " executor and executrix, and commissioners of the sale of the property of Greenwood Payne, deceased, by virtue of a decree of the county court of Davidson county," conveyed the said land, by deed, to Elizabeth H. Lightfoot, wife of J. H. Lightfoot, her heirs and assigns forever, " for the separate use and benefit of the said Elizabeth H. Lightfoot, and not to be liable for the debts of her husband, and with full power to dispose of it in her life-time, by sale, or by last will and testament."   The consideration recited is the price for which the land sold on the previous day, paid or secured to be paid by the husband.   This deed was proved on the 15th of May, 1866, and registered two days thereafter in book 37, page 190.   On the 23d of February, 1867, the petitioners reported the sales to the county court, and the report was confirmed, the decree of confirmation divesting the title out of the parties to the suit, and vesting it "in the purchasers, respectively, and their heirs forever."

On the 9th of November, 1872, lots 12 and 13 as aforesaid were conveyed by J. H. Lightfoot and Elizabeth H. Lightfoot, his wife, to the defendant John M. Bass, in trust to secure $2,000 that day loaned by the Nashville Life Insurance Company to J. H. Lightfoot, for one year, at 10 per cent. interest, payable semi-annually, for which the said J. H. Lightfoot executed his notes to the company.   This deed, after describing the lots, says, " being the same property conveyed to said E. H. Lightfoot by Z. Payne and M. Cartwright, executors, by deed recorded in the register's office of said county, in book 37, page 190, to which reference is made for a further description and title."   The deed also contains a power of sale on default of payment, and this bill was filed on the 23d of May, 1876, to enjoin the sale of the land under the power thus conferred.

The litigation turns upon the power of the wife under the deed to her.   For, although the defendants make the point that when the trust conveyance was executed the title to the

lots was in the husband, by virtue of the decree of the county court of the 23d of February, 1867, divesting and vesting title, yet the deed itself shows that the lots were conveyed to them as the property of the wife, by expressly referring to the registered conveyance to her for a " description and title," and thus estops them from disputing her title. This deed to the wife, moreover, was made in pursuance of the decree of the county court which authorized the executors to " make title to the purchasers," and no other title has been made by them. And, if there were any doubt on this point, the wife's title has been perfected by the statute of limitations, the settled law of this state being that, where the possession of property is joint, the law adjudges the possession to be with the person who has the better title, and the rule applies as strongly in favor of members of the same family as of strangers. *Fancher* v. *De Montegre*, 1 Head, 40.

Previous to the act of 1870, 99 (T. & S. Rev. § 2486, *a*, *et seq.*), it was the settled law of this state that the powers of a married woman over her separate estate could not extend beyond the plain meaning of the deed creating the estate, and the intention of the grantor, to be ascertained by a fair construction of the language used. *Morgan* v. *Elam*, 4 Yerg. 374. And, of course, if a particular manner of disposition was pointed out by the deed, the decisions were uniform that the disposition could be made in no other way. *Ware* v. *Sharpe*, 1 Swan, 489. Our court had reserved the question whether the wife could, upon privy examination, convey her separate estate when the instrument creating the estate contained no provision for its alienation in any manner. *Woodrum* v. *Kirkpatrick*, 2 Swan, 224. Afterwards, in *Young* v. *Young*, 7 Coldw. 461, upon a careful review of the authorities, the conclusion was reached that the wife could thus convey where the instrument was altogether silent on the subject of disposition. The present supreme court reversed this ruling, holding it to be clear, under the settled doctrine of the state, that a married woman has no

other power to convey or dispose of her separate estate than that conferred upon her by the instrument under which she holds. *Gray* v. *Robb*, 4 Heisk. 74. The general doctrine was rigidly enforced in *Head* v. *Temple*, 4 Heisk. 34, where the power was confined to a disposal by will or deed of gift, notwithstanding some strong language apparently reserving all the power of a *feme sole* to the married woman.

Under these decisions it is clear that the mortgage in controversy cannot be sustained unless it can be brought under the power of disposition "by sale," which is conferred. If the mortgage had been made to secure a loan of money to the wife, there might be a question whether the power of sale would not include the power to mortgage; for, in that view, the mortgage would be *pro tanto* a sale. *Mills* v. *Banks*, 3 P. W. 9; *Bell* v. *Harris*, 4 Myl. & Cr. 267; *Williams* v. *Woodard*, 2 Wend. 487; *Price* v. *Bigham*, 7 Har. & J. 296; *Hoggatt* v. *White*, 2 Swan, 268. But no such question can arise where the mortgage is to secure the debt of the husband, for the transaction is not, in the eye of a court of equity, a sale; it is the assuming by the wife of the character of a surety for the husband. *Huntingdon* v. *Huntingdon*, 2 Bro. P. C. 1; *Pocock* v. *Lee*, 2 Vern. 604; *Gleaves* v. *Paine*, 1 De G. J. & S. 87; *Neincewicz* v. *Gahn*, 3 Paige, 614; *Loomer* v. *Wheelwright*, 3 Sandf. Ch. 135. The power of sale conferred upon a married woman, of property settled to her sole and separate use, must be construed in connection with the main object of the trust—the separate benefit of the wife. The conversion by sale is intended to be for the purposes of the trust, either by reinvestment on the same uses, or by appropriation for the wife's necessities. *Cumming* v. *Williamson*, 1 Sandf. Ch. 25. The distinction is precisely the same made by the English decisions, in settlements, between a power for raising a particular charge, as in *Mills* v. *Banks*, 3 P. W. 9, and a power of sale out and out, as in *Stronghill* v. *Anstey*, 1 De G. M. & G. 635. "As a general rule," says Lord St. Leonards, in the last cited case, page 643, "there

can be no difficulty in saying that a mortgage under a mere trust for conversion out and out is not a due execution of that trust." See, to the same effect, *Haldenby* v. *Spofforth*, 1 Beav. 390 ; *Page* v. *Cooper*, 16 Beav. 400 ; *Devaynes* v. *Robinson*, 24 Beav. 86 ; *Bloomer* v. *Waldron*, 3 Hill, 366.

" Courts of equity," says Chancellor Kent, " look to the end and design of the parties in considering the extent of powers, and to a substantial, rather than a literal, execution of the power." *Wilson* v. *Troup*, 3 Cow. 200.

It would be a total perversion of the intention of the grantor in conferring a power of sale for the purposes of the trust to extend it to a transaction which is a plain violation of those purposes. *Cardwell* v. *Cheatham*, 2 Head, 14 ; *Head* v. *Temple*, 4 Heisk. 41 ; *Perkins* v. *Elliott*, 8 C. E. Green, 526.

By the act of 1870, 99 (T. & S. Rev. § 2486, *a, et seq.*), married women, owning real estate settled upon them to their separate use, are authorized " to sell, convey, devise, charge, or mortgage " the same, " by will, deed, or otherwise," as *femes sole*, upon privy examination, " provided the power of disposition is not expressly withheld in the deed or will under which they hold the property." Subject to this proviso, they " shall have the same powers of disposition, by will, deed, or otherwise, as are possessed by *femes sole*." Under the statute it has been held that the husband and wife may join in a deed of the wife's separate realty to secure a debt of the husband, where the instrument under which the wife holds prescribes no mode of disposition, if the privy examination of the wife be taken as required by the statute. *Hodges* v. *Williams*, at Knoxville, June term, 1875. (Comm. Rep. of 22d of Sept. 1875.) The effect of the statute, according to the decision, is to work a change in the capacity of the wife to dispose of her separate estate, where the instrument under which she holds prescribes no mode of disposition ; and, in such a case, to confer upon her the powers of a *feme sole*, which may be exercised for the benefit of the husband, and by a deed in

which he joins. These are sweeping innovations on the "settled doctrine of the state," and go far to restore the old English law. For, although in *Mochorro* v. *Stonehouse*, cited in *Hulme* v. *Tenant*, 1 Bro. C. C. 18, Sir Thomas. Sewell, master of the rolls, was shocked at the proposition that a married woman could be bound by an act done, touching her separate estate, in conjunction with her hus- band ; and although Lord Thurlow had an anxious desire, in *Pybus* v. *Smith*, 3 Bro. C. C. 340, to find any principle of equity strong enough to protect the property against. an act so improvident ; yet the authorities, both before and since, and both in England and America, have sustained such dispositions. *Standford* v. *Marshall*, 2 Atk. 68 ; *Peacock* v. *Monk*, 2 Ves. 190; *Allen* v. *Papworth*, Belt's Sup. 94 ; *Demarest* v. *Wyncoop*, 3 Johns. Ch. 144 ; *Field* v. *Sowle*, 4 Russ. 112 ; *Stead* v. *Nelson*, 2 Beav. 245 ; *Marshman* v. *Conklin*, 6 C. E. Green, 549 ; *Brundige* v. *Poor*, 2 Gill & J. 1. And see *McFerrin* v. *White*, 6 Coldw. 499.

There can be no doubt, then, that, if the deed to the com- plainant had prescribed no mode of disposition, the mort- gage in controversy would have been good. The deed does, however, give full power to dispose of the property by sale or will, and the question is whether this fact limits the capacity of the wife to act as a *feme sole*. The solution of this question depends upon the intention of the legislature in the proviso to the statute. Without the proviso, the married woman would be clothed with all the power of dis- position of a *feme sole*. With it, she has the capacity of a *feme sole*, upon privy examination, "provided the power of disposition is not expressly withheld."

The argument of the learned counsel for the defendants is that, although the settlement may designate a mode of disposition, yet the statute was intended to confer upon the wife the power to make a different disposition, provided the power to make that specific form of disposition is not with- held in express terms. For otherwise, he very pertinently

asks, what figure does the word " expressly" cut? And. he argues that, to construe the power as withheld by impli-- cation, is, in effect, to strike that word out of the statute. Carried to its logical result, the position is that, no matter how plain the grantor's intention may appear to confine the power of disposition to one or more prescribed modes, the grantee may adopt any other mode, unless that particular mode is expressly forbidden. The prohibition, or withhold-- ing, the counsel concedes, may be by simply saying that. the property shall be disposed of only in a prescribed mode, but it must be express, and not left to inference. The argument is undoubtedly strong, and the question by no means free from difficulty.

If the words of a statute are plain and positive, the duty of the courts is to administer the legislative will, and not. to fritter it away by nice refinements based upon their own. ideas of what the law ought to be. If, on the other hand, the language is loose and the meaning uncertain, it is the duty of the court to ascertain the evil intended to be reme-- died, and apply the statute to its correction. If this act had said in so many words, or in substance, what the argu-- ment of the counsel requires—that married women are hereby authorized, upon privy examination, to dispose of their separate realty in any mode in which a *feme sole* may dispose of her realty, unless that particular mode is forbid- den in the instrument under which she holds—the construc- tion would have admitted of no doubt. But the act neither says this in words nor in spirit. What it does say in spirit is, that a married woman may, upon privy examination, exercise the powers of disposition of an unmarried woman, provided the powers of disposition are not withheld. The whole difficulty grows out of the use of the word " expressly." But to expressly withhold anything is only a mode of say- ing that it is withheld intentionally. The act of withhold- ing is passive and negative, not active or positive, except in the intention. To ascertain when the power of disposi-

tion is or is not expressly withheld, we must still, as before the statute, look to the intention of the grantor.

The principle of our decisions on this subject is, as we have seen, to ascertain by a fair construction of the deed what was the intention of the maker, and cause that intention to be carried into effect. Upon this principle, "the power of disposition is not to be restricted, on the one hand, alone to cases where it is expressly conferred, nor, on the other hand, does it exist in every case where it is not expressly prohibited; but the powers of the wife over the property, and the use she may make of it, must depend upon a fair interpretation of the meaning and intention of the settlement." *Porter* v. *Baldwin*, 7 Humph. 175. Of course a positive restriction of the power of disposition to a particular mode would be an express, because intentional, withholding of the powers of making any other mode of disposition. But the stipulation that the *feme* may dispose of the property by a particular mode is an equally clear, because intentional, withholding of the power of disposition by any other mode; for, *expressio unius est exclusio alterius.*

"Where," says Judge McKinney, "property is given to a *feme covert*, with power to dispose of it in a particular mode, her power of disposition is restrained to the prescribed mode, and she cannot otherwise dispose of it. So, if a qualified power of disposal for a specific purpose be given, she cannot dispose of it for any other purpose. The specification of a definite purpose (such as a sale for reinvestment) would seem to operate as a restraint upon the power of disposal, as much as the limitation of a definite mode." *Campbell* v. *Fields*, 1 Coldw. 416; *Starnes* v. *Allison*, 2 Head, 221. "On principle," says Mr. Bishop, "the wife is, in all respects, to be regarded in equity as a *feme sole*, as to her separate estate, when the deed of settlement does not in terms, or by implication equivalent to an express provision, place restraints upon her." Bish. Mar. Wom. § 863. This language suggests the true solution of the dif-

ficulty. The words " expressly withheld" mean withheld by a general clause restrictive of all disposition, or by words restrictive of any other mode of disposition than those prescribed, and the latter contingency may occur when the language used, either by limiting the power or purpose of disposition, shows a clear intention to restrain, " by implication equivalent to an express provision." That a power may be " expressly withheld," it is not necessary that it should be expressly forbidden. In this view the word " expressly" is only used as a mode of saying that the power is "intentionally," "effectually," or " certainly" withheld.

The evil intended to be remedied by the legislature was the holding that the married woman could make no disposition whatever of her separate property when the power was not withheld at all. It was not intended to interfere with the " settled law," not only of this state, but of English and American jurisprudence, that the stipulation of one mode of disposition limits the power of disposition to that mode. For the doctrine in question only carries out the obvious intent of the grantor, and is the plainest dictate of good sense. Perry on Trusts, § 655, and cases cited. The evil, in the view of the legislature, was not in our decisions so far as they were based upon the clear intention of the grantor, but in the decision that she could not convey when the grantor had said nothing on the subject whatever. In that case the ordinary presumption would seem to be that, inasmuch as the grantor had expressed no wish on the subject, and inasmuch as the wife had an absolute estate in the property, the ordinary incident of ownership would necessarily follow, namely, the power of disposition. And so, undoubtedly, is the weight of authority. *Peacock* v. *Monk*, 2 Ves. 190 ; *Hulme* v. *Tenant*, 1 Bro. C. C. 20 ; *Taylor* v. *Meads*, 4 De G. J. & S. 597 ; *Lechmere* v. *Brotheridge*, 32 Beav. 353 ; *Leaycraft* v. *Hedden*, 3 Green Ch. 512 ; *North Am. Coal Co.* v. *Dyett*, 7 Paige, 9 ; *Conn* v. *Conn*, 1 Md. Ch. 212 ; *Vizonneau* v. *Pegram*, 2 Leigh, 183. The legis-

lature intended to bring the law of this state in accord with the current, and this is accomplished by the construction I have adopted. To go further would be to throw us out of the current, on the other bank.

The complainant is entitled to the relief sought, but must pay all the costs.